IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ELIAS JOSEPH KARAM, | § | |
| Plaintiff, | § | |
| v. | § | C.A. NO. SA-24-CV-00720-OLG-ESC |
| | § | |
| META PLATFORMS, INC., | § | |
| Defendant. | § | |

## DEFENDANT META PLATFORMS, INC.'S RULE 12 MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1)-(3) and 12(b)(6), Meta Platforms, Inc. (hereinafter, "Meta") hereby moves to dismiss for lack of personal jurisdiction, pursuant to the parties' arbitration clause, improper venue, and failure to state a claim ("Motion").

## I.    INTRODUCTION

***This case does not belong in Texas*** because there is no personal jurisdiction over Meta, which is incorporated in Delaware and headquartered in California. Additionally, the parties agreed to arbitration, and otherwise to resolve all disputes in California.

Even if the Court had jurisdiction—it doesn't—the claims asserted against Meta fail to state a claim because: (1) they are pled in conclusory fashion, (2) the essential elements of the pled claims are not supported by cognizable factual allegations, and (3) 47 U.S.C. § 230 categorically bars any claims based upon Meta's exercise of editorial functions, such as determining what content may be published on Facebook—exactly what Plaintiff complains about here. For these reasons and others, the Court must dismiss this lawsuit.

## II.    <u>BACKGROUND</u>

*Pro se* Plaintiff Elias Joseph Karam ("Plaintiff") filed his Petition on February 26, 2024, alleging that he paid for advertisements on Facebook to support his real estate business, but that Meta "sporadically banned" his Facebook account and the Facebook account of Plaintiff's "sales agent," with an opaque reference to "shadow banning."[1] Dkt. No. 1-1 at 4. Without further explanation, Plaintiff asserts claims for: "advertisement misrepresentation, defamation, deceptive trade practices, fraud, [and] violations of fair housing laws . . . ." Dkt. No. 1-1 at 4. Meta removed the lawsuit to federal court on June 27, 2024 based on diversity jurisdiction. Dkt. No. 1.

## III.    <u>ARGUMENT</u>

### A.    **The Court Lacks Personal Jurisdiction Over Meta**

### i.    ***Legal Standard***

Personal jurisdiction is properly challenged under Federal Rule of Civil Procedure 12(b)(2). *Commodity Futures Trading Comm'n v. Cartu*, No. 1:20-CV-908-RP, 2023 WL 5246360, at *3 (W.D. Tex. Aug. 15, 2023).[2] "The Plaintiff has the burden of establishing jurisdiction." *Zoch v. Magna Seating (Germany) GmbH*, 810 Fed. Appx. 285, 287 (5th Cir. 2020). A court may consider uncontradicted allegations, among other things, but "need not credit conclusory allegations, even if uncontroverted." *Cartu*, No. 1:20-CV-908-RP, 2023 WL 5246360, at *3.

---

[1] Although the Plaintiff lists "shadow banning" as the first in a list of his legal claims, there is no such thing as a "shadow banning" cause of action in Texas.

[2] Removal from state court to federal court "does not constitute a waiver of any right to object to lack of personal jurisdiction." *Thompson v. Cartlidge*, 158 F.3d 583 (5th Cir. 1998).

Although personal jurisdiction is governed by the law of the state in which a federal court sits, the Texas long-arm statute is co-extensive with federal Due Process. *See Bulkley & Associates, L.L.C. v. Dep't of Indus. Relations, Div. of Occ. Safety & Health of the State of Cal.*, 1 F.4th 346, 351 (5th Cir. 2021). Thus, the jurisdictional analysis ultimately reduces to a singular "Due Process" inquiry. *Id*. Personal jurisdiction can be obtained through either general or specific jurisdiction. *See, e.g.*, *Callier v. Wide Merch. Inv., Inc.*, No. EP-22-CV-00123-FM, 2023 WL 3167440, at *2 (W.D. Tex. Apr. 27, 2023).

### ii.    Analysis

Here, there is no general or specific jurisdiction over Meta and thus, this Court does not have personal jurisdiction over Meta.

### a.    This Court Does Not Have General Jurisdiction Over Meta

General jurisdiction is almost exclusively limited to an entity's **place of incorporation** and **principal place of business**. *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (these being the "paradigm all-purpose forums"); *Torson v. Hyundai Oilbank Co. Ltd*., No. 22-20065, 2022 WL 4103263, at *4 (5th Cir. Sept. 7, 2022). Only in "exceptional" circumstances—like when a corporation temporarily relocates its headquarters—will general jurisdiction exist in another forum. *Id*. at 761 n.19. "It is, therefore, **incredibly** difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Services, Ltd. V. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (emphasis added).

Here, Meta is incorporated in Delaware (not Texas) and headquartered in California (not Texas). Ex. A, Declaration of Jennifer Pricer in Support of Meta

Platform, Inc.'s Motion to Dismiss (hereinafter "Ex. A, Pricer Declaration") ¶ 3; Dkt No. 2, Meta's Rule 7.1. Corporate Disclosure Statement. Plaintiff alleges that Meta has "its principal place of business located at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218, USA." But this is conclusory and also inaccurate. *See Cartu*, No. 1:20-CV-908-RP, 2023 WL 5246360, at *3 (conclusory jurisdictional allegations properly disregarded). These facts end the general jurisdiction inquiry because there is no evidence of an exceptional circumstance effectively rendering Texas as the locus of Meta's headquarters.

### *b.    This Court Does Not Have Specific Jurisdiction Over Meta*

Specific jurisdiction obtains only where the defendant "has purposefully directed [his] activities at the forum state and the ***litigation results from alleged injuries that arise out of or relate to <u>those</u> activities***." *Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (emphasis added). Stated differently, there is no specific jurisdiction unless forum contacts rising to the level of purposeful availment actually relate to the legal claims. *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 323 (5th Cir. 2021). The plaintiff's (i.e., as opposed to the moving defendant's) connections with the forum state are irrelevant. *See Walden v. Fiore*, 571 U.S. 277 (2014).

Here, as a threshold matter, Plaintiff's jurisdictional allegation that the Court "has jurisdiction over . . . the parties because the Defendant conducts business within this jurisdiction" is conclusory, and thus properly disregarded. Dkt. No. 1-1 at 4. *See e.g.*, *Godwin v. CPF River Oaks Austin, L.L.C.*, No. 1:23-CV-1566-DII, 2024 WL 2732670, at *9 (W.D. Tex. May 28, 2024).

The only implied connection in the petition between Meta and Texas is that Facebook is available in Texas, and that Plaintiff, who is a Texas resident, uses Facebook. Dkt. No. 1-1 at 4. However, the mere availability of a website in a forum state does not give rise to personal jurisdiction *See, e.g.*, *Godwin*, 2024 WL 2732670, at *9 (no general jurisdiction or specific jurisdiction in part because mere operation of Facebook in Texas is not enough); *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 787–88 (5th Cir. 2021); *Ralls v. Facebook*, 221 F. Supp. 3d 1237, 1244 (W.D. Wash. 2016); *Harrison v. Facebook, Inc.*, No. CV 18-0147-TFM-MU, 2019 WL 1090779, at *4 (S.D. Ala. Jan. 17, 2019). The same holds true here.

The only identifiable, alleged factual basis for Plaintiff's claims is that Meta "sporadically banned the Plaintiff's Facebook account and the Facebook account of Plaintiff's sales agent." Dkt. No. 1-1 at 4.[3] He also asserts in conclusory fashion claims for "shadow banning, defamation, deceptive trade practices, fraud, violations of fair housing laws, and other wrongful actions in connection with the Plaintiff's use of Meta's services, specifically Facebook." *Id.* at 2–3. However, there is no allegation that Meta did these things from Texas. And while Plaintiff alleges that he and his business were adversely affected in Texas, mere injury to a forum resident is not a sufficient connection to the forum." Dkt. No. 1-1 at 4; *Walden*, 571 U.S. at 290.

Accordingly, there is no specific jurisdiction over Meta. Because there is no general or specific jurisdiction over Meta, this Court should dismiss the claims against Meta.

---

[3] Plaintiff also alleges that "the Facebook account of the Plaintiff's sales agent" was "sporadically banned" as well. But that other person did not bring this suit. *Id.*

**B.      The Parties Agreed to Arbitrate**

Plaintiff's claims against Meta are governed by Facebook's Terms of Service ("Terms of Service") since they emanate from his use of Facebook. Plaintiff's claims are also more specifically governed by Meta's Commercial Terms ("Commercial Terms") (collectively "Terms"),[4] which are incorporated by the Terms of Service, since he admits that he uses his Facebook account to support his business, including through the purchase of advertisements from Facebook to promote his business. *See* Dkt. No. 1-1 at 4; Ex. A-2 § 6 ("These Commercial Terms apply to access or use of the Meta Products . . . for a business or commercial purpose . . . . Business or commercial purpose includes using ads . . . ."). The Commercial Terms mandate arbitration and require application of the Federal Arbitration Act ("FAA"). *Id*. § 5(c).

**i.      *Legal Standard***

Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see e.g.*, *Carrillo v. Roicom USA, LLC*, 486 F. Supp. 3d 1052, 1058 (W.D. Tex. 2020). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

---

[4] The Current Terms of Service were last updated January 4, 2022. The Commercial Terms were last updated March 6, 2024, and prior to that on January 4, 2022. The Commercial Terms as updated on January 4, 2022 and as updated on March 6, 2024 are substantially similar in all relevant respects. Compare Ex. A-2 with Ex. A-3.

The FAA applies to any written agreement to arbitrate that appears in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. As the Supreme Court has explained, the FAA constitutes "the broadest permissible exercise of Congress' Commerce Clause power," and covers not only interstate transactions, but also intrastate transactions of a type that "in the aggregate" would have a "substantial effect on interstate commerce." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003). The "commerce" requirement is met in relation to Meta's commercial Terms and the purchase of Facebook ads. *See Kangapoda Corp. v. Facebook, Inc.*, No. CV 21-9168-JXN-AME, 2021 WL 11721658, at *2 (D.N.J. Dec. 13, 2021); *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) ("[T]he Internet is an instrumentality of interstate commerce.").

The arbitration analysis is broken into two steps: (1) "whether the parties agreed to arbitrate th[e] dispute" and (2) "whether federal statute or policy renders the claims non-arbitrable." *Id*. The first question is subdivided into two further questions: "[a] whether there is a valid agreement to arbitrate between the parties; and [b] whether the dispute in question falls within the scope of that arbitration agreement." *Id*. (quoting *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006)).

Courts across the country have found Meta's arbitration provision enforceable. *See Lag Shot LLC v. Facebook, Inc.*, No. 21-CV-01495-JST, 2021 WL 2660433 (N.D. Cal. June 25, 2021); *Kangapoda Corp. v. Facebook, Inc.*, No. CV 21-9168-JXN-AME, 2021 WL 11721658, at *3 (D.N.J. Dec. 13, 2021); *McMahon v. Meta Platforms, Inc.*, No. 2:23-CV-00171-RSL, 2023 WL 4546377, at *3 (W.D. Wash. July 14, 2023).

In evaluating arbitration agreements, "*the court should resolve any doubts about the arbitrability of a claim in favor of arbitration.*" *Castaneda v. Volt Mgmt. Corp.*, No. EP-19-CV-00338-FM, 2020 WL 2308699, at *2 (W.D. Tex. May 8, 2020) (emphasis added). Courts may consider evidence outside the pleadings when analyzing Rule 12(b)(1) arbitration motions. *See e.g., Commercial Flooring Sys., Inc. v. Hunt Constr. Group, Inc.*, No. 1:19-CV-1012-RP-SH, 2020 WL 1520140, at *2 (W.D. Tex. Mar. 30, 2020); *Banks v. Cashcall, Inc.*, 188 F. Supp. 3d 1296, 1301 n.3 (M.D. Fla. 2016).

## ii.   *Analysis*

### i.   *The Parties Agreed to Arbitrate*

All Facebook users, including Plaintiff, consent to the Terms of Service when they register for Facebook. Ex. A, Pricer Dec. ¶ 4. The Terms of Service incorporate the Commercial Terms, to which "you must agree" when using Facebook "for commercial or business purposes, such as buying ads . . . ." Ex. A-2 § 4.5.2. The Terms of Service reiterate that the "Commercial Terms" apply if the user uses Facebook "for any commercial or business purpose, including advertising . . . ." *Id.* § 5.

Here, Plaintiff admits he has a Facebook account and uses it for commercial or business purposes, including specifically to buy ads. Dkt. No. 1-1 at 4. Thus, Plaintiff consented to the Terms of Service and Commercial Terms[5] and the arbitration clause

---

[5] Courts regularly find that such "clickwrap" arrangements constitute binding contracts for purposes of arbitration and otherwise. *See e.g.*, *DHI Group, Inc. v. Kent*, No. 21-20274, 2022 WL 3755782, at *5 (5th Cir. Aug. 30, 2022); *Lag Shot LLC v. Facebook, Inc.*, No. 21-CV-01495-JST, 2021 WL 2660433 (N.D. Cal. June 25, 2021);; *Whalen v. Facebook, Inc.*, No. 20-CV-06361-JST, 2022 WL 19934419, at *2 (N.D. Cal. Apr. 11, 2022); *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012); *Sw. Airlines Co. v. BoardFirst, L.L.C.*, No. 3:06-CV-0891-B,

within the Commercial Terms, which states: "You agree to arbitrate Commercial Claims between you and Meta Platforms, Inc." Ex. A-2 § 5(c)(i).

### ii.      This Dispute is Within the Scope of the Arbitration Agreement

The arbitration clause applies to "Commercial Claims," defined to mean "any claim, cause of action, or dispute that arises out of or ***relates to any access or use of the Meta Products for business or commercial purposes***." *Id*. § 5(b) (emphasis added). "Meta Products" is very broadly defined to include "Facebook (including the Facebook mobile app and in-app browser)" and any "other features, apps, technologies, software, or services offered by Meta Platforms, Inc. . . . ." Ex. A-4, Definition of Meta Products.

Here, the dispute arises out of and relates to Plaintiff's "access" to or "use of" his Facebook account, which Plaintiff used to support his business. Specifically, Plaintiff complains that after "payment for advertisements," his and his sales agent's Facebook accounts were "sporadically banned" and that this harmed his business since he uses these Facebook accounts and Facebook advertisements to support his business. Dkt. No. 1-1 at 4.  Thus, Plaintiff's dispute falls squarely within the scope of the Commercial Terms' arbitration clause.

If there were any doubt—there is not—as to whether Plaintiff's claims against Meta fall within the scope of the arbitration agreements, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of

---

2007 WL 4823761, at *5 (N.D. Tex. Sept. 12, 2007); *Phillips v. Neutron Holdings, Inc.*, No. 3:18-CV-3382-S, 2019 WL 4861435, at *3–4 (N.D. Tex. Oct. 2, 2019); *Silverman v. Move Inc.*, 2019 WL 2579343, at *12 (N.D. Cal June 24, 2019); *Herkenrath v. Move, Inc.*, 2018 WL 2018 WL 10705782, at *3 (C.D. Cal. Aug. 21, 2018); *Ramirez v. Freescore, LLC,* 2011 WL 3812608, at *5 (C.D. Cal. Aug. 30, 2011).

arbitration." *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417-19 (2019); *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115 (11th Cir. 2014).

### iii.    *No Federal Statute or Policy Renders This Dispute Non-Arbitrable*

There are no statutes or policies rendering Plaintiff's claims non-arbitrable. Courts regularly find this to be the case without meaningful discussion unless a party points the court to a specific statute or policy to consider. *See e.g.*, *Gallagher v. Vokey*, 860 Fed. Appx. 354, 359 (5th Cir. 2021). Indeed, the only relevant public policy here is that generally favoring arbitration. *See Castaneda v. Volt Mgmt. Corp.*, No. EP-19-CV-00338-FM, 2020 WL 2308699, at *2 (W.D. Tex. May 8, 2020).

Because no statutes or policies render this dispute non-arbitrable, this Court should grant Meta's motion to dismiss in favor of arbitration. *See Castaneda v. Volt Mgmt. Corp.*, No. EP-19-CV-00338-FM, 2020 WL 2308699, at *2 (W.D. Tex. May 8, 2020). Notably, the Court can and should *dismiss* this case, rather than compel arbitration. *See Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc.*, 729 F.3d 443, 447 (5th Cir. 2013); *Griggs v. S.G.E. Mgmt., L.L.C.*, 905 F.3d 835, 839 (5th Cir. 2018).

## C.    Texas is the Wrong Venue

### i.    *Legal Standard*

When suit is filed in the wrong venue, a district court "shall dismiss" it. 28 U.S.C. § 1406(a). Challenges to venue pursuant to a forum selection clause are properly brought under Federal Rule of Civil Procedure 12(b)(3). *Gezu v. Charter*

*Communications*, 17 F.4th 547, 555 n.7 (5th Cir. 2021). There is a strong federal policy favoring enforcement of forum selection clauses. *See e.g.*, *Sobel on Behalf of SolarWinds Corp. v. Thompson*, No. 1:21-CV-272-RP, 2023 WL 4356066, at *5 (W.D. Tex. July 5, 2023). Thus, forum selection clauses are "prima facie" valid and "presumptively" enforceable where a party seeks dismissal under § 1406(a). *WBCMT 2007-C33 Blanco Retail, LLC v. Salfiti*, No. SA-13-CV-716-XR, 2014 WL 325407, at *3 (W.D. Tex. Jan. 29, 2014).

Forum selection clause analyses consist of two questions: "(1) whether the parties agreed to a contractually valid forum-selection clause, and (2) whether the present case falls within the scope of the forum-selection clause." *Janis v. Rudkin*, No. SA-15-CA-320-OLG, 2015 WL 13805119, at *4 (W.D. Tex. Aug. 21, 2015). Courts properly consider evidence outside the pleadings when ruling on Rule 12(b)(3) improper venue motions. *See e.g., In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 922 F. Supp. 2d 445, 457 (S.D.N.Y. 2013).

### ii.    Analysis

As discussed above, Plaintiff is bound by the Commercial Terms, which contain the following forum selection clause:

> If a Commercial Claim between you and Meta Platforms, Inc. is not subject to arbitration, ***you agree that the claim must be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County***, ***[CA]*** and that you submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim.

Ex. A-2, Commercial Terms § 5(c) (emphasis added). The Terms of Service contain a substantially similar clause. Ex. A-1 § 4(4). Similar forum selection clauses have been repeatedly upheld as valid throughout the country. *See e.g.*, *Wise Guys I v.*

*Meta Platforms, Inc.*, No. 3:23-CV-0217-X, 2023 WL 8434452, at \*2 (N.D. Tex. Dec. 4, 2023) ("Meta's forum-selection clause is mandatory and valid."); *Moates v. Facebook, Inc.*, No. 4:21-CV-694-ALM-KPJ, 2022 WL 2707745, at \*4 (E.D. Tex. June 13, 2022) (collecting cases).[6]

Here, the California forum selection clause in the Commercial Terms is valid. Based on its plain language, the instant dispute would necessarily fall within its scope to the extent this Court does not dismiss this case for lack of personal jurisdiction and otherwise in favor of arbitration. *See* 28 U.S.C. § 1406(a) (When suit is filed in the wrong forum, a district court "shall dismiss" it.).[7]

## D.   Plaintiff's Claims Are Insufficiently Pled

### i.   *Legal Standard*

Under Rule 12(b)(6),[8] "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face by alleging actual facts, not legal conclusions masquerading as facts." *Castaneda v. Rosales*, No.

---

[6] *See also Doe v. Facebook, Inc.*, No. CV H-22-0226, 2023 WL 3483891, at \*5 (S.D. Tex. May 16, 2023); *Thomas v. Facebook, Inc.*, No. 118CV00856LJOBAM, 2018 WL 3915585, at \*4 (E.D. Cal. Aug. 15, 2018); *Franklin v. Facebook, Inc.*, No. 1:15-CV-00655-LMM, 2015 WL 7755670, at \*2 (N.D. Ga. Nov. 24, 2015); *Franklin v. Facebook, Inc.*, No. 1:15-CV-00655-LMM, 2015 WL 7755670, at \*2 (N.D. Ga. Nov. 24, 2015); *Loomer v. Facebook, Inc.*, Case No. 19-cv-80893-SMITH, 2020 WL 2926357, \*3 (S.D. Fl. Apr. 13, 2020); *Thomas v. Facebook, Inc.*, No. 118CV00856LJOBAM, 2018 WL 3915585, at \*4 (E.D. Cal. Aug. 15, 2018); *Loomer v. Facebook, Inc.*, Case No. 19-cv-80893-SMITH, 2020 WL 2926357, \*3 (S.D. Fl. Apr. 13, 2020).

[7] Courts have power to transfer cases brought in the wrong venue. Here, Meta respectfully requests dismissal. If the Court is not inclined to grant dismissal for any reason, Meta alternatively requests transfer of this case to the U.S. District Court for the Northern District of California or a state court in San Mateo County.

[8] Section 34 of this Court's "Fact Sheet For Judge Orlando Garcia" provides for a conferral process prior to the filing of a Rule 12(b)(6) motion to dismiss. However, this process only applies "in cases where all parties are represented by counsel." Here, the plaintiff is not represented by counsel, so the conferral process is inapplicable.

EP22CV00283KCMAT, 2023 WL 2881786, at *2 (W.D. Tex. Mar. 31, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bous v. McAfee*, No. 1:22-CV-0702-LY, 2023 WL 376997, at *3 (W.D. Tex. Jan. 24, 2023). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

### ii.    *Analysis*

As an initial matter, Plaintiff's claims fail on their face since they are conclusory and bereft of factual content. Plaintiff's only meaningful factual allegation is that Meta "sporadically banned the Plaintiff's Facebook account and the account of the Plaintiff's sales agent," with a passing reference to "shadow banning." Dkt. No. 1-1 at 4. In conclusory fashion, Plaintiff asserts "defamation, deceptive trade practices, fraud, violations of fair housing laws, and other wrongful actions." *Id.* at 2–3. **That's it**. These are precisely the types of "conclusions masquerading as facts" that courts properly disregard. *See Iqbal*, 556 U.S. at 678. They are even worse than "[t]hreadbare recitals of the elements of a cause of action" because no claim elements are even referenced. *See Bous*, 2023 WL 376997, at *3. For these reasons alone, the Court can and should dismiss all of Plaintiff's claims.

### a.    *Plaintiff's Claims are Barred by Section 230*

Plaintiff's claims against Meta are also barred by the Communications Decency Act, 47 U.S.C. § 230 ("Section 230"). Plaintiff's only allegation is sporadically not being able to use his Facebook account, or otherwise, that perhaps his content

has not been accessible. Dkt. No. 1-1 at 4. Courts uniformly hold that Section 230 immunizes Facebook for removing content, preventing use of Facebook accounts, and similar actions. *See, e.g.*, *In re Facebook, Inc.*, 625 S.W.3d 80, 93 (Tex. 2021) (Section 230 bars claims against Facebook related to "warnings, restrictions on eligibility for accounts, removal of postings, etc."); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 992 (S.D. Tex. 2017) (Section 230 immunizes Facebook in "deciding whether to publish, withdraw, postpone, or alter content."). That is because "arranging and distributing third-party information" is "an essential result of publishing" and is protected by Section 230 "regardless of the specific edit[orial] or selection process." *Force v. Facebook, Inc.*, 934 F.3d 53, 66-67 (2d Cir. 2019).

Section 230 is construed "broadly in all cases arising from the publication of user-generated content." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Section 230 immunity applies if: (1) the defendant is a "provider or user of an interactive computer service"; (2) the claims are based on "information provided by another information content provider"; and (3) the claims treat the defendant "as the publisher or speaker of [that] information." 47 U.S.C. § 230(c)(1); *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 846 (W.D. Tex. 2007), *aff'd*, 528 F.3d 413 (5th Cir. 2008). Each of these conditions is met here.

### 1.    *Meta is an "Interactive Computer Service Provider"*

The first condition is easily met. Section 230 defines an interactive computer service provider as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Courts in Texas and nationwide uniformly hold that Meta meets

Section 230's "interactive computer service provider" definition. *See e.g., La'Tiejira*, 272 F. Supp. at 993; *Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 Fed. Appx. 526 (9th Cir. 2017); *United States v. Turner*, 756 Fed. Appx. 576, 580 (6th Cir. 2018); *Winter v. Facebook, Inc.*, No. 4:21-CV-01046 JAR, 2021 WL 5446733, at *4 (E.D. Mo. Nov. 22, 2021) (collecting cases).

### 2. *Plaintiff's Claims Are Based on Information Provided by Third Parties*

Plaintiff's claims necessarily arise from "information content provider[s]" ***that are not Meta***. *See* 47 U.S.C. § 230(c)(1) ("No provider or user of an interactive computer service [*i.e.*, Meta] shall be treated as the publisher or speaker of any information provided by ***another information content provider***.") (emphasis added). Here, Plaintiff complains that his Facebook account was "sporadically banned" and perhaps that some of his posts were not accessible. Dkt. No. 1-1 at 4. But these complaints implicate information created *not* by Meta, but by Plaintiff and perhaps other Facebook users (such has Plaintiff's "sales agent"). Accordingly, Section 230(c)(1)'s second requirement is met. *See, e.g., Fyk v. Facebook, Inc.*, 808 Fed. Appx. 597, 598 (9th Cir. 2020) (finding individual Facebook users constitute "another information content provider.").

### 3. *Plaintiff's Claims Seek to Treat Meta as a Publisher*

The third condition is also easily met. Under Section 230, a plaintiff treats a defendant as a "publisher" when he seeks to hold the defendant liable for its purported exercise of "editorial functions"—such as "deciding whether to publish, withdraw, postpone or alter content." *Barnes v. Yahoo!*, Inc., 570 F.3d 1096, 1101–1102 (9th Cir. 2009); *see also La'Tiejira*, 272 F. Supp. at 992. Courts interpret Section

230's immunity provisions "broadly," applying them "in all cases arising from the publication of user-generated content." *MySpace*, 528 F.3d at 418.

Here, Plaintiff alleges that his Facebook account was "sporadically banned" and that perhaps some of his content was not accessible. Dkt. No. 1-1 at 4. Courts uniformly hold that such claims impermissibly treat the defendant as a publisher of the affected third-party content. *See, e.g. Lewis v. Google LLC*, 461 F. Supp. 3d 938, 954 (N.D. Cal. 2020) ("wrongfully restrict[ing] and remov[ing]" the plaintiff's videos constitutes publishing functions under Section 230). Indeed, "the ***monitoring, screening, and deletion*** of user-generated content are actions quintessentially related to a publisher's role." *La'Tiejira*, 272 F. Supp. at 993 (emphasis added). Accordingly, Plaintiff's allegations fall squarely within the ambit of Meta's editorial functions, satisfying the third and final element of Section 230 immunity.

For all these reasons, Section 230 immunity applies and provides an independent basis for dismissal. 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section"); *Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874, 892 (N.D. Cal. 2017) ("Section 230 of the CDA is a separate and sufficient basis for dismissal.").

### b. *Plaintiff's Misrepresentation and False Advertising Claims Fail*

Plaintiff asserts "advertisement misrepresentation" without explanation. Dkt. No. 1-1 at 4. This is not a recognized cause of action. Even generously assuming Plaintiff meant to plead negligent misrepresentation, fraudulent misrepresentation, or false advertising, he did not sufficiently do so.

### 1.      *Negligent & Fraudulent Misrepresentation*

Negligent misrepresentation has four essential elements: (1) representation made in the course of business or in a transaction in which one has a pecuniary interest; (2) false information supplied for the guidance of others in their business; (3) no exercise of reasonable care or competence in obtaining or communicating the information; and (4) resulting injury. *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). Relatedly, fraudulent misrepresentation requires: (1) a false material representation; (3) misrepresentation known to be false or made recklessly; (4) intent that the plaintiff act upon it; (5) the plaintiff relied on the misrepresentation; and (6) resulting  injury. *SGK Properties, L.L.C. v. U.S. Bank Nat'l Ass'n for Lehman Bros. Small Balance Commercial Mortgage Pass-Through Certificates, Series 2007-3*, 881 F.3d 933, 943 (5th Cir. 2018).

Here, none of the essential elements listed above were pled, either in conclusory fashion or otherwise; any negligent or fraudulent misrepresentation claims necessarily fail.

### 2.      *False Advertising*

A claim for false advertising requires: (1) a false or misleading statement of fact about a product; (2) that deceived or had the capacity to deceive a substantial segment of potential consumers; (3) it was likely to influence a consumer's purchasing decision; (4) the product was in interstate commerce; and (5) plaintiff had been or was likely to have been injured as a result of the statement in issue. *See, e.g.*, *Mission Pharmacal Co. v. Virtus Pharm.*, LLC, 23 F. Supp. 3d 748, 758 (W.D. Tex. 2014).

Here, again, Plaintiff fails to plead any of the above elements or plead any sufficient facts to support them. Thus, Plaintiff's claim of false advertising must be dismissed, even generously assuming he pled it in the first instance.

### c.    *Plaintiff's Defamation Claim Fails*

26.    The essential elements of defamation are: (1) publication of a false statement of fact to a third party, (2) that defamed the plaintiff, (3) with the requisite degree of fault, and (4) that proximately caused damages. *Mem'l Hermann Health Sys. v. Gomez*, 649 S.W.3d 415, 423 (Tex. 2022). Here, not only are none of these elements pled, sufficiently or otherwise, but Plaintiff's core allegation is that Meta **prevented** plaintiff's Facebook account and/or content from being viewed by the public. Plaintiff's defamation claim thus fails on its face.

### d.    *Plaintiff's Deceptive Trade Practices Acts Claim Fails*

A Deceptive Trade Practices Act (DTPA) claim requires: (1) a false, misleading, or deceptive act or practice that is included in the "laundry list" of violations in Texas Business and Commerce Code Section 17.46(b), and (2) detrimental reliance. Tex. Bus. & Com. Code § 17.50(a)(1); *Brown & Brown v. Omni Metals, Inc.*, 317 S.W.3d 361, 379–80 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Perez v. Hung Kien Luu*, 244 S.W.3d 444, 446 (Tex. App.—Eastland 2007, no pet.). Section 17.50 of the Texas Business and Commerce Code outlines five types of wrongful acts that can support a consumer's suit under the DTPA: (1) deceptive acts or practices, (2) breach of warranty, (3) unconscionable acts, (4) violations of the Texas Insurance Code, and (5) violations of a tie-in statute. *See* Tex. Bus. & Com. Code § 17.50(a)(1)–(a)(4), (h).

Here, Plaintiff sets forth only three words without explanation: "deceptive trade practices." Dkt. No. 1-1 at 4. Plaintiff does not identify any applicable wrongful acts from DTPA § 17.46, any of the five wrongful act categories found in § 17.50, or detrimental reliance, as required. Thus, the Court should dismiss Plaintiff's "deceptive trade practices" claim.

### e.   *Plaintiff's Fraud Claim Fails*

Fraud requires: (1) a material misrepresentation, (2) positively asserted with knowledge of falsity or made recklessly without any knowledge of truth, (3) made with intent that it be relied upon, (4) reliance, and (5) resulting injury. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983).

Here, once again, Plaintiff does not allege any of the above essential elements or facts to support them. Thus, Plaintiff's fraud claim fails.

### f.   *Plaintiff's Fair Housing Claim Fails*

Both the Federal Fair Housing Act and Texas Fair Housing Act are designed to "prohibit discrimination in the rental or sale of a dwelling, or in the provision of connected services or facilities, based on certain protected characteristics." *See* 42 U.S.C. § 3604; Tex. Prop. Code Ann. §§ 301.001–.171; *Gladstone Realtors v. Vill. Of Bellwood*, 441 U.S. 91, 93, (1979); *Arredondo v. Vill. on the Lake, LTD*, 681 S.W.3d 853, 861 (Tex. App.—Houston [14th Dist.] 2023, no pet.). "The Fair Housing Act expressly prohibits discrimination in the rental or sale of a dwelling on the basis of race, color, religion, sex, familial status, or national origin." *See* 42 U.S.C. § 3604(a); *Dews v. Town of Sunnyvale, Tex.*, 109 F. Supp. 2d 526, 530 (N.D. Tex. 2000).

Here, Plaintiff is a realtor and mortgage broker who alleges that his real estate business is negatively impacted by Meta's alleged "sporadic banning" of his Facebook account. Dkt. No. 1-1 at 4. The Federal and Texas Fair Housing Acts, on the other hand, provide a remedy for people discriminated against in their pursuit of renting or purchasing property. Plaintiff has it upside down—he does not allege he was discriminated against by Meta in his attempts to personally own or rent property. Thus, his fair housing claim must be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court dismiss this case for lack of personal jurisdiction, based upon the parties' arbitration clause, for improper venue, and in the alternative for failure to state a claim. Meta requests that the Court award Meta any further relief to which it may be justly entitled.

Respectfully submitted,

*/s/ Ryan C. Wooten*
Ryan C. Wooten
State Bar No. 24075308
Michael Morehead
State Bar No. 24102242
ORRICK, HERRINGTON & SUTCLIFFE LLP
609 Main Street, 40th Floor
Houston, Texas 77002
Telephone: 713.658.6400
Facsimile: 713.658.6401
rwooten@orrick.com
mmorehead@orrick.com

ATTORNEYS FOR DEFENDANT META
PLATFORMS, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 5, 2024, a copy of the foregoing document was forwarded to all parties pursuant to the Federal Rules of Civil Procedure.

Elias Joseph Karam
259 Rockhill Dr.
San Antonio, TX 78209

*/s/ Ryan C. Wooten*
Ryan C. Wooten